# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | NO. CR 06-2216 RB |
| ) | |
| JUAN ALBERTO HOLGUIN-CHAVEZ, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant's ("Mr. Holguin-Chavez's") Motion to Suppress Evidence (Doc. 43), filed on January 17, 2007. On February 1, 2007, I held a hearing, received evidence, and heard arguments. Being otherwise fully advised, I deny the motion.

**I.    Facts.**

On July 20, 2006, at about 11:00 a.m., United States Border Patrol Agent Jaime Loera and Agent Juan Holguin were on roving patrol duty, traveling east on New Mexico State Road 9, about three miles north of the international border, and 25 miles west of Columbus, New Mexico. State Road 9 is a paved, two-lane road that runs generally east to west. The agents, in full uniform in a marked Border Patrol vehicle, were approaching Hermanas Road, a sparsely-traveled dirt road that runs north/south from State Road 9 to the Deming, New Mexico area.

The area is well-known for drug and alien smuggling apprehensions. In the prior six-month period, Agent Loera had been involved in many apprehensions in the immediate area. Indeed, earlier that same morning, Agent Loera and Agent Holguin had assisted with an alien smuggling apprehension. The area is deserted and brushy. Very limited vehicle traffic consists of local ranchers,

Border Patrol agents, illegal vehicle intrusions from across the border, and occasional interstate travelers taking a short cut between Texas and Southeastern Arizona. Agent Loera is familiar with the vehicles driven by local ranchers and he encounters illegal vehicle intrusions on a daily basis.

As the agents prepared to turn left from State Road 9 onto Hermanas Road, Agent Loera observed two pickup trucks traveling west on State Road 9. Based on the close proximity of the trucks to each other and the direction they were headed, Agent Loera surmised that the trucks were traveling in tandem and headed for Arizona. Agent Loera did not believe that the trucks would turn onto Hermanas Road, and head north toward Deming, because the trucks were coming from Columbus. The most direct route between Columbus and Deming was State Road 11, a paved road with a Border Patrol checkpoint. Alien smugglers commonly use Hermanas Road to avoid the Border Patrol checkpoint on State Road 11 between Columbus and Deming.

The first truck was an older-model white pickup. The second truck was an older-model red pickup. Agent Loera did not recognize the trucks as local vehicles because he knew that the ranchers in the immediate area drove newer trucks with dual tires.

The agents and the white truck arrived at Hermanas Road at about the same time. The agents waited before turning left, expecting the white truck and the red truck to pass them and proceed west on State Road 9. Instead, the white truck turned right onto Hermanas Road, drove a short distance and paused until the red truck turned onto Hermanas Road. The white truck then sped up and proceeded north on Hermanas Road. After it turned right onto Hermanas Road, the red truck stopped.

The agents turned onto Hermanas Road, stopped, and approached the red truck on foot to ascertain whether the driver needed assistance. Agent Loera did not suspect criminal activity was

afoot when he approached the red truck. Travelers often become lost in the area and ask agents for directions. As the agents approached the red truck on foot, they observed, in the bed of the truck, a number of people partially covered by a blue plastic tarp.

Agent Loera approached the driver of the red truck, who identified himself as David Gustavo Quintana-Armendariz, the co-defendant in this case. Agent Loera determined that Mr. Quintana-Armendariz was a citizen of Mexico in the United States illegally. Agent Holguin questioned the thirteen people in the bed of the truck. They were all citizens of Mexico illegally present in the United States.

Agent Loera arrested Mr. Quintana-Armendariz and read him his Miranda rights. Agent Loera asked Mr. Quintana-Armendariz about the white truck. Mr. Quintana-Armendariz stated that he was instructed to follow the white truck to Deming. Agent Loera surmised that the white truck was involved in the alien-smuggling scheme because he commonly encounters schemes where two vehicles are used to smuggle aliens.

About 20 minutes after Agent Loera observed the white truck proceed north on Hermanas Road, Agent Loera issued on the Border Patrol radio system a "be on the lookout" ("BOLO") for an older-model, early 1990s era, white pickup truck northbound on Hermanas Road. The usual speed of traffic on the dirt portion of Hermanas Road is about 40 miles per hour. About five minutes after Agent Loera issued the BOLO, at about 11:25 a.m., Agent Brawley stated on the radio that he had stopped a truck matching the description of the white truck at about mile marker 13 on Hermanas Road, i.e., about 13 miles north of State Road 9.

Agent Daniel Galvan had arrived to assist with the illegal aliens apprehended in the bed of the red truck. New Mexico State Police Officers were summoned to take custody of the red truck.

Agent Loera and Agent Holguin drove Mr. Quintana-Armendariz to mile marker 13 on Hermanas Road, the site where Agent Brawley had stopped the white truck. They arrived at about 11:45 a.m.

Agent Loera asked Mr. Quintana-Armendariz if the white truck was the one he had been directed to follow. Mr. Quintana-Armendariz confirmed that the truck stopped by Agent Brawley was the same white truck that Mr. Quintana-Armendariz had followed. Agent Loera and Agent Holguin also identified the stopped truck as the same white truck they observed on State Road 9 and Hermanas Road driving in tandem with the red truck. Agent Brawley arrested the driver of the white truck, who was Mr. Holguin-Chavez, and read him his Miranda rights at about 11:50 a.m. The agents transported Mr. Holguin-Chavez and Mr. Quintana-Armendariz to the Deming Border Patrol station.

After they arrived at the Deming Border Patrol station, at 12:28 p.m., Agent Galvan again read Mr. Holguin-Chavez his rights and Mr. Holguin-Chavez executed an I-214 form. (Gov. Ex. 2.) Mr. Holguin-Chavez understood his rights and voluntarily agreed to make a statement. The interview was calm. Mr. Holguin-Chavez did not ask for counsel or to use the telephone. Mr. Holguin-Chavez voluntarily gave a statement that implicated him in the alien smuggling scheme.

**II.  Discussion.**

Mr. Holguin-Chavez argues that the stop of the white truck was not justified by reasonable suspicion and the scope of the detention was unreasonable. The Government responds that the stop was supported by probable cause and reasonable suspicion.

The Fourth Amendment prohibits unreasonable searches and seizures by the Government. U.S. Const. amend. IV. A traffic stop is valid under the Fourth Amendment when probable cause or reasonable suspicion exists. *United States v. Valenzuela*, 365 F.3d 892, 896-97 (10th Cir.2004)

(probable cause standard); *United States v. Gandara-Salinas*, 327 F.3d 1127, 1129 (10th Cir.2003) (reasonable suspicion standard).

Agent Brawley had reasonable suspicion to stop the white truck. The following factors are relevant to the determination of whether an immigration stop is supported by reasonable suspicion:

> (1) characteristics of the area in which the vehicle is encountered; (2) the proximity of the area to the border; (3) the usual patterns of traffic on the particular road; (4) the previous experience of the agent with alien traffic; (5) information about recent illegal border crossings in the area; (6) the driver's behavior, including any obvious attempts to evade officers; (7) aspects of the vehicle, such as a station wagon with concealed compartments; and (8) the appearance that the vehicle is heavily loaded.

*Gandara-Salinas*, 327 F.3d at 1129-30 (*citing United States v. Monsivais*, 907 F.2d 987, 989-90 (1990) and *United States v. Brignoni-Ponce*, 422 U.S. 873, 884-85 (1975)); *see also United States v. Rodriguez-Reyes*, 2007 WL 211870 (Jan. 29, 2007) (unpublished).

In evaluating these factors, a court may not employ a "divide-and-conquer" approach by evaluating and rejecting each factor in isolation. *United States v. Arvizu*, 534 U.S. 266, 277 (2002). The ultimate determination of reasonable suspicion depends upon the totality of the circumstances. *Gandara-Salinas*, 327 F.3d at 1130. A border patrol officer may use his experience and training in detecting illegal entry and smuggling when assessing these factors. *Gandara-Salinas*, 327 F.3d at 1129. A court must defer to the officer's ability to distinguish between innocent and suspicious actions. *United States v. De la Cruz-Tapia*, 162 F.3d 1275, 1277-78 (10th Cir.1998).

Less than five minutes after he heard the BOLO, Agent Brawley encountered a vehicle matching the description given by Agent Loera. The approximate 25 minutes elapsed between the time Agent Loera and Agent Holguin observed the white truck head north on Hermanas Road and

the stop of the white truck at mile marker 13 was consistent with thirteen miles traveled on Hermanas Road. The white truck had been positively identified in the BOLO as a vehicle involved in alien smuggling. Hermanas Road runs north/south from the international border area and has little traffic. The point where the white truck was encountered lies less than twenty miles from the international border. The white truck was different than the type driven by local ranchers. Mr. Holguin-Chavez invites the Court to evaluate and reject each factor in isolation; an approach rejected by *Arvizu*. Based on the totality of the circumstances, the stop of the white truck was supported by reasonable suspicion.

Agent Brawley had probable cause to arrest Mr. Holguin-Chavez after the truck was positively identified. "Probable cause to arrest exists only when the 'facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.'" *Valenzuela*, 365 F.3d at 896 (quoting *United States v. Edwards*, 242 F.3d 928, 934 (10th Cir.2001)). Probable cause is measured against an objective standard; the " 'primary concern is whether a reasonable officer would have believed that probable cause existed to arrest the defendant based on the information possessed by the arresting officer.' " *United States v. Soto*, 375 F.3d 1219, 1222 (10th Cir.2004) (quoting *Valenzuela*, 365 F.3d at 896-97).

The Supreme Court has made the following distinction between reasonable suspicion and probable cause:

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less

reliable than that required to show probable cause.

*Valenzuela*, 365 F.3d at 896 (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)).

Agent Brawley had reasonable suspicion to stop the white truck because it matched the description relayed by Agent Loera and it was northbound on Hermanas Road. Mr. Quintana-Armendariz, Agent Loera and Agent Holguin positively identified the white truck as the vehicle that they observed driving in tandem with the red truck that contained illegal aliens. Mr. Holguin-Chavez was the driver and sole occupant of the white truck. After the white truck was positively identified, Agent Brawley had probable cause to arrest Mr. Holguin-Chavez.

At the hearing, Mr. Holguin-Chavez argued that the investigative detention exceeded the scope of the stop. Investigative detention of a vehicle and its occupants must be reasonably related in scope to the circumstances that justified the stop. *United States v. Cheromiah*, 455 F.3d 1216, 1222 (10th Cir.2006). A Border Patrol agent who stops a vehicle based on a reasonable suspicion that the vehicle is involved in the transport of illegal aliens may question the vehicle's occupants about their citizenship and their travel route, and may ascertain whether other individuals are inside. *Id.* The occupant of a vehicle may be detained further if, during the course of a stop, the Border Patrol agent develops an objectively reasonable and articulable suspicion that the occupant is engaged in some other illegal activity. *Id.*

When he stopped the white truck, Agent Brawley had reasonable suspicion that it was engaged in illegal activity because it matched the description in the BOLO and it was traveling in the same direction on Hermanas Road as the white truck observed by Agent Loera and Agent Holguin. About twenty minutes after the stop, Mr. Quintana-Armendariz, Agent Loera, and Agent Holguin positively identified the white truck as the vehicle involved in the alien-smuggling scheme. Agent

Brawley placed Mr. Holguin-Chavez under arrest and read him his rights within twenty-five minutes of the stop. By 12:28 pm., Mr. Holguin-Chavez had been transported to the Deming station, where Agent Galvan again read him his rights. Mr. Holguin-Chavez gave an incriminating statement. No more than one hour and five minutes elapsed between the stop of the white truck and the interview with Agent Galvan. The detention was reasonably related in scope to the circumstances that justified the stop. The investigative detention did not exceed the scope of the stop.

**III.    Conclusion.**

The actions of the Border Patrol agents did not violate the Fourth Amendment.

**WHEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Suppress Evidence (Doc. 43), filed on January 17, 2007, is **DENIED**.

*[signature]*

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**